IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA; and

THE STATES OF ILLINOIS, CALIFORNIA,
FLORIDA, TEXAS, DELAWARE, HAWAII,
INDIANA, LOUISIANA, NEW HAMPSHIRE,
NEVADA, TENNESSEE, MICHIGAN,
NEW MEXICO, NEW YORK, and

THE COMMONWEALTHS OF MASSACHUSETTS
and VIRGINIA; and

THE DISTRICT OF COLUMBIA;


*ex rel.* JIM CONRAD,

Plaintiffs,

v.
ABBOTT LABORATORIES, INC. ;
ACTAVIS U.S.;
ALCON LABORATORIES INC.;
ALPHA THERAPEUTIC CORPORATION;
AMERICAN REGENT LABORATORIES, INC.;
B. BRAUN MEDICAL, INC.;
BARR LABORATORIES, INC.;
BAXTER HEALTHCARE CORPORATION;
BRISTOL-MYERS SQUIBB COMPANY;
CSL BEHRING;
DEY, L.P.;
FALCON PHARMACEUTICALS;
FOREST LABORATORIES, INC.;
GALLIPOT, INC.;
GLAXOSMITHKLINE
   f/k/a and d/b/a Smithkline Beecham Corporation;
GOLDLINE LABORATORIES, INC.;
HOSPIRA, INC.;

CIVIL ACTION NO.
RDB-07-cv-3176

FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)(2)


SECOND AMENDED FALSE
FALSE CLAIMS ACT
COMPLAINT

1

JAZZ PHARMACEUTICALS, INC.;
JOHNSON & JOHNSON
  f/k/a Pfizer Consumer Healthcare Inc.;
JONES PHARMA INC.;
JMI-DANIELS PHARMACEUTICALS, INC.;
MALLINCKRODT, INC.;
MCNEIL-PPC, INC.;
MEDICIS PHARMACEUTICAL CORPORATION
  d/b/a Medicis Dermatologics
MYLAN PHARMACEUTICALS INC.;
NOVARTIS CONSUMER HEALTH, INC.;
NYCOMED US INC. f/k/a E. Fougera and Co. ;
ORTHO-MCNEIL PHARMACEUTICAL, INC.
  f/k/a Ortho Pharmaceutical Corp.;
PERRIGO PHARMACEUTICALS CO.;
PFIZER, INC.;
QUALITEST PHARMACEUTICALS, INC.;
ROXANE LABORATORIES, INC.;
SANDOZ, INC.;
SCHERING CORPORATION;
SCHERING HEALTHCARE PRODUCTS, INC.;
SCHWARZ PHARMA, INC.;
SYNTHON PHARMACEUTICALS;
TEVA PHARMACEUTICAL USA;

UDL LABORATORIES, INC.;
UNITED RESEARCH LABORATORIES, INC.;
UPSHER-SMITH LABORATORIES, INC.;
WATSON PHARMA, INC.;
WESTWOOD SQUIBB PHARMACEUTICALS, INC.;
WYETH CONSUMER HEALTHCARE, INC.
  f/k/a Whitehall-Robins Healthcare
WYETH, INC.
  f/k/a A.H. Robins Co.

       Defendants.

_____/


I.     <u>BACKGROUND</u>

    1.    JIM CONRAD ("Relator") brings this action on behalf of the UNITED STATES OF

AMERICA ("UNITED STATES") for treble damages and civil penalties arising from DEFENDANT's conduct in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA").

2.      The pervasive unlawful conduct described herein began at least six (6) years before the filing of the initial Complaint, and has continued to date.

3.      This action is also brought under the respective qui tam provisions of False Claims Acts (or similarly named) on behalf of the STATE OF ILLINOIS, the STATE OF CALIFORNIA, the STATE OF FLORIDA, the STATE OF TEXAS; the COMMONWEALTH OF MASSACHUSETTS; the STATE OF DELAWARE; the DISTRICT OF COLUMBIA, the STATE OF HAWAII, the STATE OF INDIANA, the STATE OF LOUISIANA, the STATE OF NEW HAMPSHIRE, the STATE OF NEVADA, the STATE OF TENNESSEE, the STATE OF MICHIGAN, the STATE OF NEW MEXICO, THE STATE OF NEW YORK, and the COMMONWEALTH OF VIRGINIA. These states, along with the UNITED STATES, are hereafter collectively referred to as the Government.

4.      The unlawful conduct is straightforward.  Defendants reported their drugs' as "Non-Innovator" (instead of their proper designation) under the Medicaid Rebate Program in order to avoid paying hundreds of millions of dollars in rebate payments. To this day, Defendants unlawfully reduce the amounts of rebates they pay for brand name drugs by reporting them as "Non-Innovator" drugs. In addition, by falsely reporting their drugs as "Non-Innovator, Defendants unlawfully have overcharged the 340B program entities because their falsely deflated rebate amounts ended up increasing the maximum allowable 340B price for the subject drugs.

5.      Defendants were able to perpetrate this deception because the Medicaid Rebate

Program has been based upon the assumption by the Center for Medicare and Medicaid Services ("CMS") and the states, that a manufacturer's designation of drug status would be true, accurate and honest.  Defendants knew that CMS and the State Medicaid programs had no practical alternative but to rely on the honesty of drug labelers such as Defendants when representing the drug status of each of their drug products.

6.     Defendants wrongful practices are especially pernicious given their effect on the public fisc and in connection with a government-sponsored, taxpayer-funded means-based entitlement program that was created to provide a social safety net for those who are among the nation's most vulnerable citizens - the poor and infirm and needy.

7.     As a voluntary participant in the Medicaid Program and the 340B program, Defendants are charged with the knowledge and requirements of State and Federal law.

8.     Defendants ignored this obligation entirely and knowingly, brazenly and intentionally reported false information to the government.  Defendants are liable under federal and state law for their affirmative misrepresentations.

9.     As this fraud continues to date, halting the Defendants' fraudulent, unfair and deceptive practices and recovering the significant in damages suffered by the federal and state governments, is a matter of supreme public importance and the fundamental goal of this litigation.

FEDERAL JURISDICTION AND VENUE

10.     The acts proscribed by 31 U.S.C. S 3729 et seq. and complained of herein occurred in the District of Maryland and elsewhere, as Defendants do business in the District of Maryland and, throughout the United States.  Therefore, this Court has jurisdiction over this case pursuant to 31 U.S.C.  3732 (a), as well as under 28 U.S.C. § 1345. This Court has supplemental jurisdiction over

this case for the claims brought on behalf of the states (referenced in paragraph 3) pursuant to 31

U.S.C. §3732(b) and/or 28 U.S.C. § 1367, inasmuch as recovery is sought on behalf of said states

which arises from the same transactions and occurrences as the claim brought on behalf of the United

States.

11.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), and 28 U.S.C. § 1391

(b) and (c), because all  Defendants transact business in this District, and one or more of the acts

committed by each Defendant and proscribed by  31 U.S.C. §3729 occurred in this District.

PARTIES

12.     The UNITED STATES funds the provision of medical care, including pharmaceutical

products, for eligible citizens through Government Healthcare Programs such as Medicare,

Medicaid, TRICARE, and other agencies and programs, acting through the Centers for Medicare &

Medicaid Services ("CMS") within the U.S. Department of Health and Human Services ("HHS"),

the Department of Defense, and other federal agencies.

13.     All states, including those set forth in paragraph 3, provide care to certain of their

citizens under the Medicaid Programs. Medicaid is a federal-state entitlement program that purchases

basic heath services on behalf of certain low-income populations. Over half of those enrolled in

Medicaid are children, about a fifth are low-income parents; about a sixth are low-income

individuals with disabilities and the remainder are low-income elderly (most of whom are also

enrolled in Medicare). The costs of the services that Medicaid buys on behalf of these populations

are shared by the states and the federal government, which matches, on an open-ended basis, all

allowable state expenditures.

14.     Relator, JIM CONRAD, is a resident of the state of Pennsylvania. Relator brings this

action based upon his independent and direct knowledge.

15.     Defendant ABBOTT LABORATORIES, INC. is an Illinois corporation whose principal place of business is located in Abbott Park, IL. Abbott Pharmaceuticals is the pharmaceutical division of Abbott Laboratories, Inc.

16.     Defendant, ACTAVIS U.S., is a New Jersey corporation whose principal place of business is located in Morristown, New Jersey.

17.     Defendant, ALCON LABORATORIES INC., a subsidiary of Alcon Holdings Inc., whose principal place of business is located in Fort Worth, Texas.

18.     Defendant, ALPHA THERAPEUTIC CORPORATION, is a California corporation with its principal place of business in Los Angeles, CA.

19.     Defendant, AMERICAN REGENT LABORATORIES, INC. is a subsidiary of Luitpold Pharmaceuticals, Inc. It is a New York corporation with its principal place of business located in Shirley, NY.

20.     Defendant, B. BRAUN MEDICAL, INC. is the U.S. subsidiary of B. Braun Melsungen. Its principal place of business is located in Bethlehem, PA.

21.     Defendant,  BARR LABORATORIES, INC. is a New York corporation whose principal place of business is located in Pomona, NY.

22.     Defendant, BAXTER HEALTHCARE CORPORATION is a Delaware corporation and the principal domestic operating subsidiary of Baxter International whose principal place of business is located in Deerfield, Illinois.

23.     Defendant, BRISTOL-MYERS SQUIBB COMPANY is a Delaware corporation whose principal place of business is located in New York, NY.

24.     Defendant, CSL BEHRING is a Delaware corporation whose principal place of business is located in King of Prussia, PA.

25.     Defendant, DEY, L.P. is a Delaware limited partnership with its principal offices in Napa, CA.

26.     Defendant, FALCON PHARMACEUTICALS is a corporation organized under the laws of the State of Texas with its principal place of business located in Fort Worth, TX.

27.     Defendant, FOREST LABORATORIES, INC. is a Delaware corporation whose principal place of business is located in New York, NY.

28.     Defendant, GALLIPOT, INC. is a Minnesota corporation with its principal place of business in St. Paul, MN.

29.     Defendant, GOLDLINE LABORATORIES, INC., a subsidiary of ████████████, which is a subsidiary of Teva Pharmceutical Industries, Ltd. It is a Florida corporation with its principal place of business in Miami, FL.

30.     Defendant, HOSPIRA, INC. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Lake Forest, IL.

31.     ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

32.     Defendant, JAZZ PHARMACEUTICALS, INC. is a corporation organized and existing under the laws of  the State of Delaware with its principal place of business in Palo Alto, CA.

33.     Defendant, JOHNSON & JOHNSON is a New Jersey corporation whose principal

place of business is located in Brunswick, NJ. It acquired Pfizer Consumer Healthcare, Inc., in 2006, and owns and/or operates it or its successor.

34.     Defendant, JONES PHARMA, INC., a wholly owned subsidiary of King Pharmaceuticals, Inc., is a Tennessee or Delaware Corporation, with its principal place of business in Bristol, TN.

35.     Defendant, JMI-DANIELS PHARMACEUTICALS, INC., a wholly owned subsidiary of King Pharmaceuticals, Inc., is a Florida corporation with its principal place of business in St. Petersburg, FL.

36.     Defendant, MALLINCKRODT INC., is a Delaware corporation with its principal place of business located in Hazelwood, MO.

37.     Defendant, MCNEIL-PPC, INC., d/b/a McNeil Consumer Healthcare, a wholly owned subsidiary of Johnson & Johnson, is a New Jersey corporation whose principal place of business is located in Fort Washington, PA.  McNeil Consumer Healthcare is a division of MCNEIL-PPC, INC.

38.     Defendant, MEDICIS PHARMACEUTICAL CORPORATION d/b/a Medicis Dermatologics is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Scottsdale, AZ.

39.     Defendant, MYLAN PHARMACEUTICALS INC., a wholly owned subsidiary of Mylan Laboratories, is a West Virginia corporation whose principal place of business is located in Canonsburg, PA.

40.     Defendant, NOVARTIS CONSUMER HEALTH, INC., is an Illinois corporation with its principal place of business in Saint Charles, Illinois. It   is a subsidiary of Novartis

Pharmaceuticals Corporation.

41.     Defendant, NYCOMED US INC. f/k/a E. Fougera and Co. is a subsidiary or a fictitious name of Altana, Inc. Its principal place of business is located in Melville, NY.

42.     Defendant, ORTHO-MCNEIL PHARMACEUTICAL, INC., f/k/a Ortho Pharmaceutical Corp. a wholly owned subsidiary of Johnson & Johnson, is a Delaware corporation whose principal place of business is located in Raritan, NJ.

43.     Defendant, PERRIGO PHARMACEUTICALS CO. is a corporation organized under and the laws of the state of Michigan, with its principal place of business in Allegan, MI.

44.     Defendant, PFIZER, INC. is a Delaware corporation whose principal place of business in New York, NY. Pfizer, Inc. of Pfizer Consumer Healthcare, Inc. was a subsidiary until 2006, when it was sold to Johnson & Johnson.

45.     Defendant, QUALITEST PHARMACEUTICALS, INC., a subsidiary of Apax Partners, is an Alabama Corporation with its principal place of business in Huntsville, AL.

46.     Defendant, ROXANE LABORATORIES, INC.,  a wholly owned subsidiary of Boehringer Ingelheim Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business in Columbus, OH.

47.     Defendant, SANDOZ, INC. is a wholly owned subsidiary of Novartis. Sandoz is a Delaware corporation whose principal place of business is located in Princeton, NJ.

48.     Defendant, SCHERING CORPORATION is a New Jersey corporation whose principal place of business is located in Kenilworth, NJ. It is a subsidiary of Schering-Plough Corporation.

49.     Defendant, SCHERING HEALTHCARE PRODUCTS, INC., a subsidiary of

Schering-Plough Corporation, is a Tennessee corporation with its corporate offices located in Summit, NJ.

50.    Defendant, SCHWARZ PHARMA, INC., a subsidiary of Schwarz Pharma AG,  is a Delaware Corporation with its principal place of business in Mequon, WI.

51.    Defendant, SMITHKLINE BEECHAM CORPORATION d/b/a GlaxoSmithKline, a Pennsylvania corporation whose principal place of business is located in Philadelphia, PA.

52.    Defendant, SYNTHON PHARMACEUTICALS is a North Carolina corporation with its principal place of business located in Research Triangle Park, NC.

53.    Defendant, TEVA PHARMACEUTICAL USA is a Delaware corporation whose principal place of business is located in North Wales, PA.

54.    ██████████████████████████████████████

██████████████████████████████████████

55.    Defendant, UDL LABORATORIES, INC., a wholly owned subsidiary of Mylan Laboratories, Inc, is an Illinois corporation whose principal place of business is in Canonsburg, PA.

56.    Defendant, UNITED RESEARCH LABORATORIES, INC., a/k/a United Research Laboratories/Mutual Pharmaceutical Company (URL/Mutual), is a Pennsylvania Corporation with its principal place of business in Philadelphia, PA.

57.    Defendant, UPSHER-SMITH LABORATORIES, INC. is a Minnesota corporation whose principal place of business is located in Maple Grove, MN.

58.    Defendant, WATSON PHARMA, INC., is a Delaware corporation whose principal place of business is located in Corona, CA.

59.    Defendant, WESTWOOD SQUIBB PHARMACEUTICALS, INC.  is a subsidiary

of Bristol Myers Squibb Co. Its principal place of business is located in New York and it is a

Delaware corporation.

60.     Defendant, WYETH CONSUMER HEALTHCARE, INC. f/k/a "Whitehall-

Robins Healthcare"is a subsidiary of Wyeth, Inc., with its principal place of business located in

Madison, NJ.

61.     Defendant, WYETH, INC. f/k/a A.H. Robins Co., a division of American Home

Products Corp., is a Delaware corporation with its principal place of business in Madison, NJ.

62.     At all times relevant hereto, Defendants acted through their agents and employees and

the acts of Defendants agents and employees were within the scope of their agency and employment.

The policies and practices alleged in this Complaint were, on information and belief, set or ratified

at the highest corporate levels of Defendants.

FALSE CLAIMS ACT

63.     The FCA was originally enacted in 1863, and was substantially amended in 1986 by

the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153.  Congress enacted the 1986

amendments to enhance and modernize the Government's tools for recovering losses sustained by

frauds against it after finding that federal program fraud was pervasive.  The amendments were

intended to create incentives for individuals with knowledge of Government frauds to disclose the

information without fear of reprisals or Government inaction, and to encourage the private bar to

commit resources to prosecuting fraud on the Government's behalf.

64.     The Act provides that any person who presents, or causes to be presented, false or

fraudulent claims for payment or approval to the United States Government, or knowingly makes,

uses, or causes to be made or used false records and statements to induce the Government to pay or

approve false and fraudulent claims, is liable for a civil penalty ranging from $5,500 up to $11,000 for each such claim, plus three times the amount of the damages sustained by the federal Government.

65.     The Act allows any person having information about false or fraudulent claims to bring an action for himself and the Government, and to share in any recovery.  The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the Defendant during that time).  Based on these provisions, *qui tam* plaintiff and relator seek through this action to recover all available damages, civil penalties, and other relief for state and federal violations alleged herein.

## MEDICAID AND ITS OUTPATIENT PRESCRIPTION DRUG COVERAGE

66.     The UNITED STATES enacted the Medicaid program in 1965 as a cooperative undertaking between the federal and state governments to help the states provide health care to low-income individuals.

67.     CMS, a component of HHS, oversees the Medicaid programs in each state. The Medicaid program pays for services pursuant to plans developed by the states and approved by the Secretary of HHS, through CMS.  See 42 U.S.C. §§1396a(a)-(b).  States pay doctors, hospitals, pharmacies, and other providers and suppliers of medical items and services according to established rates.  See 42 U.S.C. §§1396b(a)(1), 1903(a)(1).  The federal government then pays each state a statutorily established share of "the total amount expended ... as medical assistance under the State plan ..." See 42 U.S.C. §1396b(a)(1)  This federal-to-state payment is known as federal financial participation ("FFP").

68.     States must submit a "state plan" meeting the Medicaid statute and rules of the

Secretary of HHS.  42 U.S.C. §1396a. The Medicaid State Plan is the document that defines how each state will operate its Medicaid program.  The State Plan addresses the areas of state program administration, Medicaid eligibility criteria, service coverage, and provider reimbursement.

69.     State participation in Medicaid is voluntary, but once a state agrees to participate, the state must comply with all federal statutory requirements.  The Medicaid plan proposed by each state must be approved by the federal government. *See* 42 U.S.C. §§1396a(a) and (b).

MEDICAID REBATE PROGRAM

70.     Pharmaceutical manufacturers and labelers participating in Medicaid programs rebate to the states a portion of the price of drugs purchased for Medicaid purposes.  See 42 U.S.C. §1396r-8(a)(1).  Manufacturers do this because the Medicaid statute, 42 U.S.C. §§1396a-u, permits the UNITED STATES to reimburse states only for "Covered Outpatient Drugs" purchased from labelers who have agreed to pay statutorily specified rebates to those states.  See 42 U.S.C. §1396r-8.  Thus, pharmaceutical labelers that want their drugs available to Medicaid beneficiaries under the Medicaid program must enter into a Drug Rebate Agreement with the HHS Secretary to provide rebates.  See 42 U.S.C. §1396r-8(a)(1).

71.     Congress passed the rebate provision expressly to help reduce state Medicaid drug expenditures.

72.     In Medicaid, drugs are identified and tracked by 11-digit national drug codes (NDCs). NDCs identify unique formulations of each drug, including the manufacturer, strength and package size.

73.     Both the federal government and States have a direct and compelling interest in accurate reporting in the rebate program, which helps to reduce the costs the states themselves

13

incurred for drugs purchased by Medicaid patients.

74.     To that end, each Defendant herein and the Secretary of HHS "on behalf of the

Department of Health and all States" has executed a Rebate Agreement that is in all material respects

identical to the unsigned Model Rebate Agreement attached hereto as **Exhibit A**.

75.     When entering into the Rebate Agreement with The Secretary of Health and Human

Services, the labeler agrees to certain reporting and rebate payment requirements.

The Rebate Agreement provides:

> II     <u>MANUFACTURER'S RESPONSIBILITIES</u>
> In order for the Secretary to authorize that a State
> receive payment for the Manufacturer's drugs under
> Title XIX of the Act, 42 U.S.C. Section 1396 <u>et seq.</u>,
> the Manufacturer agrees to the following:
> (a) To calculate and, except as provided under section
> V(b) of this agreement, to make a Rebate Payment to
> each State Medicaid Agency for the Manufacturer's
> Covered Outpatient Drugs paid for by the State
> Medicaid Agency during a quarter.

76.     "Rebate Payment" is defined as, "with respect to the Manufacturer's Covered

Outpatient Drugs, the quarterly payment by the Manufacturer to the State Medicaid Agency,

calculated in accordance with section 1927 of the Act and the provisions of this agreement." <u>Model</u>

<u>Rebate Agreement, Exhibit A at I(V)</u>.

77.     At the end of each quarter, CMS calculates the rebate amounts for each

manufacturer/labeler, by drug, and states then invoice each manufacturer for the appropriate

amounts.

78.     On a quarterly basis, each State Agency reports, accounts receivable and rebate

collection information (from the manufacture/labelers) for the Medicaid Drug Rebate Program on

Form CMS 64.9R. This report is part of the Form CMS 64 report, which summarizes actual Medicaid expenditures for each quarter and is used by CMS to reimburse the FFP of these expenditures.

REPORTING DRUG STATUS TO DETERMINE REBATE PERCENTAGE

79.     In order to determine rebate amounts, the reporting requirements include designation of a drug's status into one of 3 categories: 1) Innovator Multiple Source Drug, 2) Single Source Drug, or 3) Noninnovator Multiple Source Drug  (All 3 categories hereinafter collectively referred to as "Drug Status.") The percentage of a drug's price that is rebated to the states is directly related to Drug Status.

80.     "Innovator Multiple Source Drug" is defined by statute as having "the meaning set forth in Section 1927(k)(7)(A)(ii) of the Act and shall include all Covered Outpatient Drugs approved under a New Drug Application (NDA), Product License Approval (PLA), Establishment License Approval (ELA) or Antibiotic Drug Approval (ADA). A Covered Outpatient Drug marketed by a cross-licensed producer or distributor under the approved NDA shall be included as an innovator multiple source drug when the drug product meets this definition."  42 U.S.C. § 1396r-8(c)(1)(C)(k). The Model Rebate Agreement defines Innovator Multiple Source Drug as "including all covered Outpatient Drugs approved under a New Drug Application (NDA)." Model Rebate Agreement, Exhibit A at I(K). In 42 CFR 447.502, CMS clarified that an Innovator Multiple Source drug includes an authorized generic drug including any labelers operating under the NDA. It also includes a Covered Outpatient Drug approved under a PLA, ELA or ADA.

81.     "Single Source Drug" is defined by statute as " a covered outpatient drug which is produced or distributed under an original new drug application approved by the Food and Drug

Administration, including a drug product marketed by any cross-licensed producers or distributors operating under the New Drug Application (NDA)."

82.     "Non-Innovator Multiple Source Drug" is defined by statute as "a multiple source drug that is not an innovator multiple source drug."

83.     A Single Source, or Innovator Multiple Source Drugs are both commonly known and referred to herein as a "Brand Name Drug", while a Non-Innovator Multiple Source Drug is commonly known as, and referred to herein as a "Generic Drug."

84.     At all times, the manufacturers have ultimate responsibility to submit the correct identification of Drug Status of its drugs in order for the Government to calculate the rebate amounts due for each drug. HHS has relied entirely on the manufacturers identification of the Drug Status.

85.     For Brand Name drugs, the rebate consists of two components: 1) the manufacturer must pay a "basic rebate" equal to the greater of (I) 15.1 percent of the "Average Manufacturer Price" (AMP) of the drug or (ii) the difference between the drug's AMP and its "Best Price" (BP) whichever is greater; plus (2) the manufacturer must pay an "additional" rebate to the extent that the AMP of the drug has increased faster than the rate of inflation since the launch of the product.

86.     The manufacturers/labelers of Brand Name Drugs almost always owe the additional rebate. In 2003, for instance, the drugs for which an additional rebate was owed represented about 84 percent of Medicaid's reimbursements for brand-name prescription drugs.

87.     The rebate for Generic Drugs is much less than for a Brand Name Drugs. It is a base rate of 11% of AMP, with no additional rebate. 42 U.S.C. § 1396r-8(c)(3). In contrast, the total rebates due for Brand Name Drugs are typically over 25% of AMP, a difference of over double. Manufacturers who are dishonest have incentive to fraudulently report their drugs' status as a

Generic Drug - a "Non-Innovator".

MEDICAID PROGRAM FRAUD ALLEGATIONS

88.     Attached as **Exhibit B-1 and B-2** are representative lists of the Brand Name Drugs (together with representative NDCs), which were represented to CMS by Defendants, to be Non-Innovator Drugs. The particular Brand Name Drugs identified are not intended to be an exhaustive list as to all products or NDCs for which the Defendants engaged in the misconduct described in this Complaint.

89.     In order to decrease the amounts owed to the states, Defendants misrepresented material facts regarding the regulatory origin/status of their Brand Name Drugs, to wit, that the drugs set forth on Exhibits B-1 and B-2 are Non-Innovator Drugs.  Had the truth been known, that the Brand Name Drugs did not and could not fit the definition of a Non-Innovator Multi-Source Drug, the manufacturers/labelers would have been obligated to pay higher rebate amounts to the states. Moreover, the UNITED STATES would have paid less FFP to each state inasmuch as the Rebate amounts would have been much greater.

90.     Thus, despite the Government's good faith reliance to charge manufacturers/labelers a unit rebate amount based upon the manufacturer's representation of drug status, the Defendants deceptively and fraudulently, breached their duty to deal honestly with the Government.

91.     Defendants were aware that their Brand Name Drugs did not and could not fit the definition of Non-Innovator Multi-Source Drug,  and did nothing to stop or correct the falsity. Defendants did not inform the Government that their drugs were  approved by New Drug Applications ("NDA's").  In short, the Defendants sat idly by in complete disregard of their duty to deal honestly with the government and with the knowledge that their silence would result in millions

of dollars in damage to the Government

92.     False records and statements were caused and submitted by the Defendants because Defendants included the Brand Name Drug products in documents submitted to the Government, such as their initial drug product list and data (pursuant to the Medicaid Rebate Agreement each Defendant signed and submitted to CMS), as if they were "Non-Innovator Multiple Source Drugs," and then repeated the false records and statements by including the information in quarterly submissions to CMS, and in some instances, to the states themselves in separate documentation. Having done so, the rebate amounts for their Brand Name Drugs were drastically reduced.

93.     Accordingly, each  Defendant prepared and submitted false records (including the Medicaid Rebate Agreement and the quarterly drug product data") to CMS to conceal, avoid or decrease an obligation to pay or transmit money to the Government. In turn, the Government issued quarterly invoices to each Defendant, generally in the form and content set forth in **Exhibit C** attached hereto. The Government prepared said invoices based upon a reduced amount as if the subject drugs were Generic Drugs, when truth and fact that they were Brand Name drugs and should have been designated as  Sole Source or Innovator Drugs, not Non-Innovator Drugs.

94.     Because the federal share is computed after the rebate, the states and the federal government both share in the Medicaid savings from the rebate, and therefore both have been damaged. Each Defendant paid rebates in amounts less than half of what they legally owed, and would have been billed, had they truthfully reported their Drug Status.

95.     Federal Medicaid law requires states and localities to seek recovery of the full amount of any overcharge to the Medicaid program, including federal and state shares of such overcharges. 42 U.S.C. §1396a(a)(25)(A) & (B); 42 U.S.C. §1396b(d)(3)(A).

96.     Under the Medicaid rebate provision, any manufacturer that knowingly provides false information "is subject to a civil monetary penalty in an amount not to exceed $100,000 for each item of false information." "[S]uch civil money penalties are in addition to other penalties as may be prescribed by law." 42 U.S.C. §1396r-8(b)(3)(C)(ii).

## 340B PROGRAM ALLEGATIONS

97.     In addition to the Medicaid Rebate Agreement, in order for payments to be made under Medicaid for covered outpatient prescribed drugs the manufacturers of the drugs must have entered into and comply with:

a.      A pharmaceutical pricing agreement with the Public Health Service, in accordance with section 340B of the Public Health Service Act, for all covered out patient drugs purchased by a covered entity; and

b.      A pharmaceutical pricing agreement with the Department of Veterans Affairs (DVA), for all single source drugs, innovator multiple source drugs, biologicals, and insulin.

98.     In 1992, Congress enacted section 340B of the Public Health Service Act (PHS Act), 42 U.S.C. 256b, to establish the 340B Drug Pricing Program. This program, which is currently managed by the Health Resources and Services Administration (HRSA), provides for sales of drugs at or below established ceiling prices to certain "covered entities" (340B entities) that provide health care to some of the country's most disadvantaged citizens who are typically uninsured or underinsured.

99.     340B entities include such health care entities as public hospitals, AIDS Drug Assistance programs, and community health centers. Based on the most recent HRSA estimates, 340B entities spent $4 billion on covered outpatient drugs in calendar year 2005.

100.    As of April 2006, more than 12,300 entities were enrolled in the 340B

Program.

101.    Pursuant to the PHS Act, manufacturers sign a Pharmaceutical Pricing Agreement

(Agreement) stipulating that they will charge 340B entities at or below a specified maximum price,

known as the 340B ceiling price, for covered outpatient drug purchases. The model Agreement (and

instructions) that all Defendants have signed, either identical to or in substance, is attached here to

as **Exhibit D**.

102.    Both the Government and the manufacturers calculate 340B ceiling prices using the

same statutorily-defined formula and the drug pricing data that manufacturers report to CMS for the

purposes of the Medicaid drug rebate program.

103.    Manufacturers are responsible for calculating 340B ceiling prices and ensuring that

340B entities are charged at or below 340B ceiling prices for their drug purchases, regardless of

whether the 340B entity purchases drugs directly from the manufacturer or through a wholesaler.

The calculation is generally as follows:

a.    Manufacturers and labelers are required to report to CMS each quarter the average

manufacturer price (AMP) for each of their drugs. CMS uses AMP and other data to calculate a unit

rebate amount (URA) that serves as a basis for the rebate amounts paid by manufacturers. The 340B

ceiling price is based on these components and is essentially equal to the AMP reduced by the URA.

b.    The AMP and URA used in the 340B ceiling price formula are based on the smallest

dispensable unit of each drug, such as a tablet, capsule, or milliliter. Therefore, taken literally, the

ceiling price applies to each unit of the drug that the entity purchases    for example, $1 per pill.

c.    To implement the 340B ceiling price requirement, the per-unit ceiling price must be

multiplied by the drug package size in which entities purchase drugs     for example, a bottle of 100 tablets versus individual tablets. The 340B ceiling prices per package are calculated as follows: [(AMP)- (URA)] multiplied by the drug's package size.

       d.      Occasionally, a drug's URA is greater than its AMP, resulting in a negative ceiling price. Therefore, to convert negative prices to practical prices, HRSA developed the penny price policy, which advises manufacturers to charge entities one penny per unit in these situations.

       104.     Pharmaceutical manufacturers and HRSA calculate 340B ceiling prices every quarter. Pharmaceutical manufacturers use their calculated 340B ceiling prices in sales to 340B entities, but they are not required to report these prices to HRSA. Therefore, for oversight purposes, HRSA must calculate 340B ceiling prices as well.

       105.     To calculate 340B ceiling prices, HRSA receives the AMP and URA from CMS each quarter under the terms of an Intra-Agency Agreement. As explained above, CMS receives the manufacturers' pricing data for the Medicaid drug rebate program and calculates a URA.

       106.     Under a separate contract, HRSA obtains the package size information needed to calculate 340B ceiling prices from First DataBank (FDB), a contracted provider of drug product information. HRSA assumed responsibility for calculating the 340B ceiling price in October 2005. Previous to this, CMS had calculated the 340B ceiling price and transmitted it to HRSA each quarter.

       107.     It is the common practice if not the exclusive practice of pharmaceutical manufacturers and labelers, to charge/list the maximum price possible for each drug, under the 340B program formula.

       108.     If the 340B price for the drugs listed are therefore set at the maximum allowable AMP minus "rebate percentage," then the 340B entities have been over-charged based upon the

erroneous drug category designation of each Defendant characterizing their drugs as Non-Innovators.

109.    Each 340B entity therefore that purchased Defendant's drugs listed in this Complaint, have been damaged by the overcharge, estimated at approximately 20% per drug.


## COUNT I- FALSE CLAIMS ACT (MEDICAID REBATE PROGRAM)

110.    Relator realleges and incorporates by reference paragraphs 1 -96 as though fully set forth herein.

111.    This is a claim by Relator, on behalf of the UNITED STATES, for treble damages and penalties under the FCA, 31 U.S.C. §3729-3733 against Defendants.  For at least the preceding 6 years, prior to the filing of Relator's initial Complaint, through present, in the District of Maryland and elsewhere throughout the United States, Defendants have knowingly and willfully violated the FCA and in doing so have caused damages to the United States and the States, including having knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, and decrease their obligation to pay or transit money or property to the Government.

112.    In violation of 31 U.S.C. §3729, Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Based on the Defendants' labeling

of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the Government relied on this information, and the Government submitted invoices to each Defendant for the drugs attributed to each Defendant on **Exhibit B-1 and B-2**, based on a unit rebate amount of approximately 11%, instead of a much higher percentage. Accordingly, Defendants paid far less than they should have in rebates for their Brand Name Drugs.

113.    Defendants knowingly made, used, or caused to be made or used these false records or statements to conceal, avoid or decrease their obligation to pay or transit money or property to the Government.

114.    By virtue of the false records and statements made, used, and presented or caused to be presented by Defendants, the UNITED STATES is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false claim presented or caused to be presented.

WHEREFORE, Relator respectfully requests this Court to enter Judgment against Defendants, as follows:

(a)    That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides.

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendants caused to be presented to the Government Programs under the Federal False Claims Act.

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorney's fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That the Relator be awarded the maximum amount allowed pursuant the Federal False Claims Act.

(e)    That this Court award such other and further relief as it deems proper.

## COUNT II- FALSE CLAIMS ACT (340B PROGRAM)

115.    Relator realleges and incorporates by reference paragraphs 1 - 109 as though fully set forth herein.

116.    This is a claim by Relator, on behalf of the UNITED STATES, for treble damages and penalties under the FCA, 31 U.S.C. §3729-3733 against Defendants for knowingly causing to be presented and presenting false record or statements to Government Healthcare Programs, which resulted in damages to the United States. From at least the last 6 years prior to the filing of Relator's initial Complaint, through present in the District of Maryland and elsewhere throughout the United States, Defendants have violated the False Claims Act, including by knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, and decrease their obligation to pay or transit money or property to the Government.

117.    Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Reports (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as a "Non-Innovator Multi-Source Drug," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7) and Exhibit D, the Pharmaceutical Pricing Agreement.

118.    Based on the Defendants' erroneous designation of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the Defendants submitted elevated pricing for their drugs under the 340B program, and did not give the appropriate "340b discount" due.

119.    Accordingly, the 340B program participants paid far more than they should have for Defendants' Brand Name Drugs. In turn, the UNITED STATES was damaged.

120.    By virtue of the false records and statements made, used, and presented or caused to

be presented by Defendants, the UNITED STATES is entitled to three times the amount by which

it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500.00 and not more

than $11,000.00 for each false claim presented or caused to be presented.

WHEREFORE, Relator respectfully requests this Court to enter Judgment against

Defendants, as follows:

      (a)      That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides.

      (b)      That civil penalties of $11,000 be imposed for each and every false claim that Defendants caused to be presented to the Government Programs under the Federal False Claims Act.

      (c)      That pre- and post-judgment interest be awarded, along with reasonable attorney's fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

      (d)      That the Relator be awarded the maximum amount allowed pursuant the Federal False Claims Act.

      (e)      That this Court award such other and further relief as it deems proper.

## COUNT III
## ILLINOIS WHISTLEBLOWER REWARD & PROTECTION ACT

121.    Plaintiff repeats and realleges each allegation contained in paragraphs 1-96 above as

if fully set forth herein.

122.    This is a qui tam action brought by RELATOR on behalf of the State of Illinois to

recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection

Act, 740 ILCS 175 et seq.

123.    740 ILCS 175/3(a) provides liability for any person who violates the law by engaging

in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses,

or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation

to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having

knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

124.    The State of Illinois, by and through the Illinois Medicaid program and other state healthcare programs, and unaware of Defendants conduct, invoiced Defendants and accepted rebates from Defendants, in amounts which understated what each Defendant truly owed the state.

125.    Had the State of Illinois known that Defendants were violating the federal and state laws cited herein and/or that records and statements submitted to the Government (which includes the state) in connection with Defendants' drug status contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug or accepted the lower amount.

126.    As a result of Defendants' numerous violations of 740 ILCS 175/3(a), the State of Illinois has been damaged in an amount far in excess of millions of dollars exclusive of interest.

127.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 740 ILCS 175/3(b) on behalf of himself and the State of Illinois.

128.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF ILLINOIS:

(1)    Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT IV
## CALIFORNIA FALSE CLAIMS ACT

129.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

130.    This is a qui tam action brought by RELATOR on behalf of the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code

§ 12650 et seq.

131.    Cal. Gov't Code § 12651(a) provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

132.    The State of California, by and through the California Medicaid program and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

133.    Had the State of California known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

134.    As a result of Defendants' numerous violations of Cal. Gov't Code § 12651(a), the State  of California has been damaged in an amount far in excess of millions of dollars exclusive of interest.

135.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of himself and the State of California.

136.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF CALIFORNIA:

(1)    Three times the amount of actual damages which the State of California has sustained as a result of Defendants' conduct;
(2)    A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or any other

applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relators incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT V
## FLORIDA FALSE CLAIMS ACT

137.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

138.    This is a qui tam action brought by RELATOR on behalf of the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 et seq.

139.    Fla. Stat. § 68.082 provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as

30

"Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

140.    The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

141.    Had the State of Florida known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

142.    As a result of Defendants' numerous violations of Fla. Stat. § 68.082(2), the State of Florida has been damaged in an amount far in excess of millions of dollars exclusive of interest.

143.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of himself and the State of Florida.

144.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF FLORIDA:

(1)     Three times the amount of actual damages which the State of Florida has sustained as a result of Defendants' conduct;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Relators incurred in connection with this action,

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

# COUNT VI
# TEXAS FALSE CLAIMS ACT

145.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

146.    This is a qui tam action brought by RELATOR on behalf of the State of Texas to recover double damages and civil penalties under V.T.C.A. Hum. Res. Code § 36.001 et seq.

V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to one who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State;

> (1) knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:
> (a) on an application for a contract, benefit, or payment under the Medicaid program; or
> (b) that is intended to be used to determine its eligibility for a benefit or payment under the Medicaid

program.

(2) knowingly or intentionally concealing or failing to disclose an event:

    (a) that the person knows affects the initial or continued right to a benefit or payment under the Medicaid program of.

        (I)      the person, or

        (ii)      another person on whose behalf the person has applied for a benefit or payment or is receiving a benefit or payment; and

    (b) to permit a person to receive a benefit or payment that is not authorized or that is greater than the payment or benefit that is authorized;

* * *

(4) knowingly or intentionally makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

        (b) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

(5) knowingly or intentionally charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition of the provision of a service or continued service to a Medicaid recipient if the cost of the service provided to the Medicaid recipient is paid for, in whole or in part, under the Medicaid program.

147.    Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement. Based on

the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

148.   The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

149.   Had the State of Texas known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

150.   As a result of Defendants' numerous violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

151.   Defendants did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

152.   Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on

behalf of himself and the State of Texas.

153.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF TEXAS:

(1)    Two times the amount of actual damages which the State of Texas has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $10,000 pursuant to V.T.C.A. Hum. Res. Code § 36.025(a)(3) for each false claim which Defendants caused to be presented;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to V.T.C.A. Hum. Res. Code § 36.110, and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relators incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT VII
## DELAWARE FALSE CLAIMS ACT

154.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

155.    This is a qui tam action brought by RELATOR on behalf of the State of Delaware to recover treble damages and civil penalties under Del. Code. Ann. Tit. 6, Sec. 1201 et seq.

6 Del. Code. Ann. § 1201(a) provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or

causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

156.   The State of Delaware, by and through the Delaware Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

157.   Had the State of Delaware known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator

Drug.

158.    As a result of Defendants' numerous violations of Del. Code. Ann., Tit. 6, Sec. 1201 et seq., the State of Delaware has been damaged in an amount far in excess of millions of dollars exclusive of interest.

159.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Del. Code. Ann., Tit. 6, Sec 1201 et seq., on behalf of himself and the State of Delaware.

160.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Delaware in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF DELAWARE:

(1)    Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendants' conduct;
(2)    A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Del. Code. Ann., Tit. 6, Sec 1201 et seq., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT VIII
## HAWAII FALSE CLAIMS ACT

161.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

162.    This is a qui tam action brought by RELATOR on behalf of the State of HAWAII to recover treble damages and civil penalties under Haw. Rev. Stat., Sec. 661-21 et seq.

163.    Haw. Rev. Stat., Sec., 661-21 et seq., provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

164.     The State of HAWAII, by and through the HAWAII Medicaid program and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

165.     Had the State of HAWAII known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

166.     As a result of Defendants' numerous violations of Haw. Rev. Stat., Sec. 661-21 et seq., the State of HAWAII has been damaged in an amount far in excess of millions of dollars exclusive of interest.

167.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Haw. Rev. Stat., Sec. 661-25(a) on behalf of himself and the State of HAWAII.

168.     This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of HAWAII in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF HAWAII:

(1)     Three times the amount of actual damages which the State of HAWAII has sustained as a result of Defendants' conduct;

(2)    A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Haw. Rev. Stat., Sec 661-21 et seq., and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT IX
## INDIANA FALSE CLAIMS ACT

169.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

170.    This is a qui tam action brought by RELATOR on behalf of the State of Indiana to recover treble damages and civil penalties under Indiana Code 5-11-5.5 et seq.

171.    Indiana Code 5-11-5.5 et seq. provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined

in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

172.    The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

173.    Had the State of Illinois known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

174.    As a result of Defendants' numerous violations of Indiana Code 5-11-5.5, the State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

175.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Indiana Code 5-11-5.5 on behalf of himself and the State of Indiana.

176.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF INDIANA:

(1)    Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendants' conduct;

(2)    A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Indiana Code 5-11-5.5, and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT X
## LOUISIANA FALSE CLAIMS ACT

177.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

178.    This is a qui tam action brought by RELATOR on behalf of the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs, LA.Rev. Stat. Ann. § 437.1 et seq.

179.    LA.Rev. Stat. Ann. Sec 438.3.1 et seq. provides liability for any person who

violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

180.    The State of Louisiana, by and through the Louisiana Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

181.    Had the State of Louisiana known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes

the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

182.    As a result of Defendants' numerous violations of LA.Rev. Stat. Ann. Sec 438.3 the State of Louisiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

183.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to LA.Rev. Stat. Ann. Sec. 439.1(A) et seq., on behalf of himself and the State of Louisiana.

184.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF LOUISIANA:

(1)    Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendants' conduct;
(2)    A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to LA.Rev. Stat. Ann. Sec 437.1 et seq., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XI
## NEW HAMPSHIRE FALSE CLAIMS ACT

185.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

186.    This is a qui tam action brought by RELATOR on behalf of the State of New Hampshire to recover treble damages and civil penalties under the New Hampshire False Claims Act Section 167:61.

187.    New Hampshire Section 167:61-b, provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each

Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

188.    The State of New Hampshire, by and through the New Hampshire Medicaid program and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

189.    Had the State of New Hampshire known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

190.    As a result of Defendants' numerous violations of New Hampshire Section 167:61-b, the State of New Hampshire has been damaged in an amount far in excess of millions of dollars exclusive of interest.

191.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to New Hampshire Section 167:61, on behalf of himself and the State of New Hampshire.

192.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of New Hampshire in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NEW HAMPSHIRE:

(1)   Three times the amount of actual damages which the State of New Hampshire has sustained as a result of Defendants conduct;
(2)   A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)   Prejudgment interest; and
(4)   All costs incurred in bringing this action.

To RELATOR:

(1)   The maximum amount allowed pursuant to New Hampshire Section 167:61 and/or any other applicable provision of law;
(2)   Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)   An award of reasonable attorneys' fees and costs; and
(4)   Such further relief as this Court deems equitable and just.

## COUNT XII
## NEVADA FALSE CLAIMS ACT

193.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

194.   This is a qui tam action brought by RELATOR on behalf of the State of Nevada to recover treble damages and civil penalties under Nevada Nev. Rev. Stat. Sec 357.010 et seq.

195.   Nevada Nev. Rev. Stat. Sec, 357.040(1) et seq. provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their

47

Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

196.    The State of Nevada, by and through the Nevada Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

197.    Had the State of Nevada known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

198.    As a result of Defendants numerous violations of Nevada Nev. Rev. Stat. Sec, 357.010 et seq., the State of Nevada has been damaged in an amount far in excess of millions of dollars exclusive of interest.

199.    Relator is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action pursuant to Nevada Nev. Rev. Stat. Sec, 357.010 et seq., on behalf of himself and the State of Nevada.

200.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF NEVADA:

(1)    Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendants' conduct;
(2)    A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Nevada Nev. Rev. Stat. Sec, 357.010 et seq., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XIII
## TENNESSEE FALSE CLAIMS ACT

201.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

202.    This is a qui tam action brought by RELATOR on behalf of the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code. Ann. Sec 71-5-181 et seq.

203.     Tenn. Code. Ann. Sec, 71-5-182(a)(1) provides liability for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

204.     The State of Tennessee, by and through the Tennessee Medicaid program and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

205.     Had the State of Tennessee known that Defendants were violating the federal and

state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

206.    As a result of Defendants' numerous violations of Tenn. Code. Ann. Sec. 71-5-181 et seq. the State of Tennessee has been damaged in an amount far in excess of millions of dollars exclusive of interest.

207.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tenn. Code. Ann. Sec, 71-5-181 et seq., on behalf of himself and the State of Tennessee.

208.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Tennessee in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF TENNESSEE:

(1)    Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendants' conduct;
(2)    A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented to the State of Tennessee;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Tenn. Code. Ann. Sec 71-5-181 et seq., and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relator incurred in connection

51

with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XIV
## MICHIGAN FALSE CLAIMS ACT

209.     Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 96 above as if fully set forth herein.

210.     This is a qui tam action brought by RELATOR on behalf of the State of Michigan to recover treble damages and civil penalties under the Michigan Medicaid False Claims Act.

211.     Defendants violated multiple subsections of the Michigan Medicaid False Claims Act, MI ST Ch. 400, including but not limited to: (1) In section 400.603, that "A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for Medicaid benefits… [or] for use in determining rights to a Medicaid benefit." It further provides that "A person, having knowledge of the occurrence of an event affecting …[the] initial or continued right of any other person on whose behalf he has applied…shall not conceal or fail to disclose that event with intent to obtain a benefit to which the person or any other person is not entitled or in an amount greater than that to which the person or any other person is entitled."

212.     Under section 400.612, "A person who receives a benefit which the person is not entitled to receive by reason of fraud or making a fraudulent statement or knowingly concealing a material fact shall forfeit and pay to the state a civil penalty equal to the full amount received plus triple the amount of damages suffered by the state as a result of the conduct by the person".

213.     Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or

decrease an obligation to pay or transmit money or property to the Government. Defendants

submitted to the UNITED STATES, through HHS, in various documentation including their

Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-

367), and other documentation, false information in the form of listing their Brand Name Drug(s)

as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate

Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state

in documentation submitted directly to this State including arising out of the State Supplemental

Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such

documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and

the State submitted invoices to each Defendant for the drugs attributed to each Defendant on

Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much

higher percentage.

  214. The State of Michigan, by and through the Michigan Medicaid program and other

state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted

rebates in amounts from Defendants in amounts which understated what each Defendant truly

owed the state.

  215. Had the State of Michigan known that Defendants were violating the federal and

state laws cited herein and/or that the records and statements to the Government (which includes

the state) in connection with Defendants' conduct contained false and/or misleading information,

it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a

Non-Innovator Drug.

  216. As a result of Defendants' numerous violations of Michigan Medicaid False

Claims Act, the State of Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

217.   Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Michigan Medicaid False Claims Act, on behalf of himself and the State of Michigan.

218.   This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF MICHIGAN:

(1)   Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendants' conduct;
(2)   A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)   Prejudgment interest; and
(4)   All costs incurred in bringing this action.

To RELATOR:

(1)   The maximum amount allowed pursuant to Michigan Medicaid False Claims Act, and/or any other applicable provision of law;
(2)   Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)   An award of reasonable attorneys' fees and costs; and
(4)   Such further relief as this Court deems equitable and just.

## COUNT XV
## NEW MEXICO FALSE CLAIMS ACT

219.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through

96 above as if fully set forth herein.

220.    This is a qui tam action brought by RELATOR on behalf of the State of New

Mexico to recover treble damages and civil penalties under New Mexico Medicaid False Claims

Act N.M. Stat. Ann. § § 27-14-1 et seq.

221.    N.M. Stat. Ann. § § 27-14-1 et seq. provides liability including but not limited to,

for any person who

> 4A. presents, or causes to be presented, to the state a claim
> for payment under the Medicaid program knowing that such claims
> is false or fraudulent claim;
> 4B. presents, or causes to be presented, to the state a claim
> for payment under the Medicaid program knowing that the person
> receiving a Medicaid benefit or payment is not authorized or is not
> eligible for a benefit under the Medicaid program;
> 4C. makes, uses or causes to be made or used a record or
> statement to obtain a false or fraudulent claim under the Medicaid
> program paid for or approved by the state knowing such record or
> statement is false;
> 4D.  conspires to defraud the state by getting a claim
> allowed or paid under the Medicaid program knowing that such
> claim is false or fraudulent; [and/or]
> 4E. makes, uses, or causes to be made or used a record or
> statement to conceal, avoid or decrease an obligation to pay or
> transmit money or property to the state, relative to the Medicaid
> program, knowing that such record or statement is false….

222.    Defendants have engaged in reverse false claims, by having knowingly and

directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or

decrease an obligation to pay or transmit money or property to the Government. Defendants

submitted to the UNITED STATES, through HHS, in various documentation including their

Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-

367), and other documentation, false information in the form of listing their Brand Name Drug(s)

as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

223.    The State of New Mexico, by and through the New Mexico Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

224.    Had the State of New Mexico known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

225.    As a result of Defendants' numerous violations of N.M. Stat. Ann. § § 27-14-1 et seq.,  the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

226.    RELATOR is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. § §

27-14-1 et seq. on behalf of himself and the State of New Mexico.

227.     This Court is requested to accept pendent jurisdiction over this related state claim

as it is predicated upon the same exact facts as the federal claim, and merely asserts separate

damages to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following

damages to the following parties and against Defendants:

> To the STATE OF NEW MEXICO:

(1)     Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendants' conduct;
(2)     A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

> To RELATOR:

(1)     The maximum amount allowed pursuant to N.M. Stat. Ann. § § 27-14-1 et seq. and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT XVI
## STATE OF NEW YORK FALSE CLAIMS ACT

228.     Plaintiff repeats and realleges each allegation contained in paragraphs 1 through

96 above as if fully set forth herein.

229.     This is a qui tam action brought by RELATOR on behalf of the State of New

York for treble damages and penalties under the New York False Claims Act, 2007 N.Y. Laws

58, Section 39, Article XIII.

230.    The New York False Claims Act, provides for liability, at Section 189 (1) for any person who violates the law by engaging in the conduct set forth therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have engaged in reverse false claims, by having knowingly and directly made, used or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. Defendants submitted to the UNITED STATES, through HHS, in various documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation, false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

231.    The State of New York, by and through the New York Medicaid program and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

232.    Had the State of New York known that Defendants were violating the federal and

state laws cited herein and/or that the records and statements to the Government (which includes

the state) in connection with Defendants conduct contained false and/or misleading information,

it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a

Non-Innovator Drug.

233.    As a result of Defendants' violations of the New York State False Claims Act, the

State of New York has been damaged in an amount far in excess of millions of dollars exclusive

of interest.

234.    RELATOR is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action pursuant to the New York State False

Claims Act on behalf of himself and the State of New York.

235.    This Court is requested to accept pendent jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following

damages to the following parties and against Defendant:

To the STATE OF NEW YORK:

(1)    Three times the amount of actual damages which the State of New York
       has sustained as a result of Defendant'S conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
       false claim which Defendant caused to be presented to the State of New
       York;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)     The maximum amount allowed pursuant to 2007 N.Y. Laws 58, Section
        39, Article XIII, and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relators incurred in
        connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.


### COUNT XVII
### COMMONWEALTH OF MASSACHUSETTS FALSE CLAIMS ACT

236.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through

96 above as if fully set forth herein.

237.    This is a qui tam action brought by RELATOR on behalf of the Commonwealth

of Massachusetts for treble damages and penalties under Massachusetts False Claims Act,

Mass.Gen. Laws Ann. Chap. 12 § 5(A) et seq.  Mass. Gen. Laws Ann. Chap. 12 § 5B provides

liability for any person who violates the law by engaging in the conduct set forth therein,

including but not limited to by anyone who knowingly makes, uses, or causes to be made or used,

a false record or statement to conceal, a void, or decrease an obligation to pay or transmit money

to the State. Defendants have engaged in reverse false claims, by having knowingly and directly

made, used or caused to be made or used, a false record or statement to conceal, avoid, or

decrease an obligation to pay or transmit money or property to the Government. Defendants

submitted to the UNITED STATES, through HHS, in various documentation including their

Medicaid Rebate Agreement, their Quarterly Medicaid Rebate Agreement Updates (Form CMS-

367), and other documentation, false information in the form of listing their Brand Name Drug(s)

as "Non-Innovator Multi-Source Drugs," as that term is defined in the Medicaid Rebate

Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same representations to the state

in documentation submitted directly to this State including arising out of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on this information, and the State submitted invoices to each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%, instead of a much higher percentage.

238.    The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

239.    Had the Commonwealth of Massachusetts known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants' conduct contained false and/or misleading information, it would not have invoiced each Defendant for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

240.    As a result of Defendants' numerous violations of Mass. Gen. Laws Ann. Chap. 12 § 5B, the Commonwealth of Massachusetts has been damaged in an amount far in excess of millions of dollars exclusive of interest.

241.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5(c)(2) on behalf of himself and the Commonwealth of Massachusetts.

242.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the Commonwealth of Massachusetts in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the COMMONWEALTH OF MASSACHUSETTS:

(1)    Three times the amount of actual damages which the Commonwealth of
       Massachusetts has sustained as a result of Defendants' conduct;
(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
       false claim which Defendants caused to be presented;
(3)    Prejudgment interest; and
(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Mass. Gen. Laws Ann. Chap.
       12, §5F and/or any other applicable provision of law;
(2)    Reimbursement for reasonable expenses which Relators incurred in
       connection with this action;
(3)    An award of reasonable attorneys' fees and costs; and
(4)    Such further relief as this Court deems equitable and just.

## COUNT XVIII
## COMMONWEALTH OF VIRGINIA FALSE CLAIMS ACT

243.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through

96 above as if fully set forth herein.

244.    This is a qui tam action brought by RELATOR on behalf of the Commonwealth

of Virginia for treble damages and penalties under Virginia Fraud Against Taxpayers Act. §

8.01-216.1 et seq.

245.    The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(1)

provides liability for any person who violates the law by engaging in the conduct set forth

therein, including but not limited to by anyone who knowingly makes, uses, or causes to be made

or used, a false record or statement to conceal, a void, or decrease an obligation to pay or

transmit money to the State. Defendants have engaged in reverse false claims, by having

knowingly and directly made, used or caused to be made or used, a false record or statement to

conceal, avoid, or decrease an obligation to pay or transmit money or property to the

Government. Defendants submitted to the UNITED STATES, through HHS, in various

documentation including their Medicaid Rebate Agreement, their Quarterly Medicaid Rebate

Agreement Updates (Form CMS-367), and other documentation, false information in the form of

listing their Brand Name Drug(s) as "Non-Innovator Multi-Source Drugs," as that term is defined

in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-8(k)(7). Defendants made the same

representations to the state in documentation submitted directly to this State including arising out

of the State Supplemental Rebate Agreement.  Based on the Defendants' labeling of the Brand

Name Drugs in such documentation as "Non-Innovator Multi-Source Drugs," the State relied on

this information, and the State submitted invoices to each Defendant for the drugs attributed to

each Defendant on Exhibit B-1 and B-2, based on a unit rebate amount of approximately 11%,

instead of a much higher percentage.

246.    The Commonwealth of Virginia, by and through the Virginia Medicaid program

and other state healthcare programs, and unaware of Defendants conduct, prepared invoices and

accepted rebates in amounts from Defendants in amounts which understated what each

Defendant truly owed the state.

247.    Had the Commonwealth of Virginia known that Defendants were violating the

federal and state laws cited herein and/or that the records and statements to the Government

(which includes the state) in connection with Defendants conduct contained false and/or

misleading information, it would not have invoiced each Defendant for the subject drugs at the

lower rate applicable to a Non-Innovator Drug.

248.     As a result of Defendants numerous violations of Virginia Fraud Against

Taxpayers Act. § 8.01-216.1, et.seq.  the Commonwealth of Virginia has been damaged in an

amount far in excess of millions of dollars exclusive of interest.

249.     RELATOR is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action pursuant to Virginia Fraud Against

Taxpayers Act. § 8.01-216.1 et seq. on behalf of himself and the Commonwealth of Virginia.

250.     This Court is requested to accept pendent jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate

damage to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following

damages to the following parties and against Defendants:

To the COMMONWEALTH OF VIRGINIA:

(1)     Three times the amount of actual damages which the Commonwealth of
        Virginia has sustained as a result of Defendants' conduct;
(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each
        false claim which Defendants caused to be presented;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     The maximum amount allowed pursuant to Virginia Fraud Against
        Taxpayers Act. § 8.01-216.1 and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relators incurred in
        connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

## COUNT XIX
## DISTRICT OF COLUMBIA FALSE CLAIMS ACT

251.     Plaintiff repeats and realleges each allegation contained in paragraphs 1 through

96 above as if fully set forth herein.

252.     This is a qui tam action brought by RELATOR on behalf of the District of

Columbia to recover treble damages and civil penalties under D.C. Code Ann. Sec. 2-308.13 et

seq.

253.     D.C. Code Ann. Sec., 2-308.14(a) et seq. provides liability for any person who

violates the law by engaging in the conduct set forth therein, including but not limited to by

anyone who knowingly makes, uses, or causes to be made or used, a false record or statement to

conceal, a void, or decrease an obligation to pay or transmit money to the State. Defendants have

engaged in reverse false claims, by having knowingly and directly made, used or caused to be

made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or

transmit money or property to the Government. Defendants submitted to the UNITED STATES,

through HHS, in various documentation including their Medicaid Rebate Agreement, their

Quarterly Medicaid Rebate Agreement Updates (Form CMS-367), and other documentation,

false information in the form of listing their Brand Name Drug(s) as "Non-Innovator Multi-

Source Drugs," as that term is defined in the Medicaid Rebate Agreement and 42 U.S.C. §1396r-

8(k)(7). Defendants made the same representations to the state in documentation submitted

directly to this State including arising out of the State Supplemental Rebate Agreement.  Based

on the Defendants' labeling of the Brand Name Drugs in such documentation as "Non-Innovator

Multi-Source Drugs," the State relied on this information, and the State submitted invoices to

each Defendant for the drugs attributed to each Defendant on Exhibit B-1 and B-2, based on a

unit rebate amount of approximately 11%, instead of a much higher percentage.

254.     The DISTRICT OF COLUMBIA, by and through the District of Columbia

Medicaid program and other state healthcare programs, and unaware of Defendants' conduct,

prepared invoices and accepted rebates in amounts from Defendants in amounts which understated what each Defendant truly owed the state.

255.     Had the DISTRICT OF COLUMBIA known that Defendants were violating the federal and state laws cited herein and/or that the records and statements to the Government (which includes the state) in connection with Defendants conduct contained false and/or misleading information, it would not have invoiced each DEFENDANT for the subject drugs at the lower rate applicable to a Non-Innovator Drug.

256.     As a result of Defendants' numerous violations of D.C. Code Ann. Sec. 2-308.13 et seq., the DISTRICT OF COLUMBIA has been damaged in an amount far in excess of millions of dollars exclusive of interest.

257.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to D.C. Code Ann. Sec. 2-308.13 et seq., on behalf of himself and the District of Columbia.

258.     This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the DISTRICT OF COLUMBIA in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the DISTRICT OF COLUMBIA:

(1)     Three times the amount of actual damages which the District of Columbia has sustained as a result of Defendants' conduct;
(2)     A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented;
(3)     Prejudgment interest; and
(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     The maximum amount allowed pursuant to D.C. Code Ann. Sec. 2-308.13 et seq., and/or any other applicable provision of law;
(2)     Reimbursement for reasonable expenses which Relator incurred in connection with this action;
(3)     An award of reasonable attorneys' fees and costs; and
(4)     Such further relief as this Court deems equitable and just.

DATED this_____ day of July, 2009.

Respectfully Submitted,

_____/s/_____
Kevin B. Kamenetz
Federal Bar No.03548
401 Washington Ave.
Suite 201
Towson, Maryland 21204
Phone: 410-825-0070
Facsimile: 410-825-1794
E-Mail:Kamenetzlaw@comcast.net

Of Counsel:
Kenneth J.  Nolan, Esq.
Fla. Bar No.: 603406
Marcella Auerbach, Esq.
Fla. Bar No.: 249335
Nolan & Auerbach, P.A.
435 N. Andrews Ave., #401
Fort Lauderdale, FL 33301
Telephone: (954) 779-3943
Fax: (954) 779-3937

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent via U.S. Mail this <u>1st</u> day of July 2009, to the following:

Thomas F. Corcoran
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

Joyce R. Branda
Daniel R. Anderson
Adam J. Schwartz
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

_____/s/_____
Kevin B. Kamenetz, Esq.
